## A96A2213. THE STATE v. NICHOLS.
(484 SE2d 507)

POPE, Presiding Judge.

Defendant William Keith Nichols was arrested in his father's home, and was subsequently charged with driving under the influence; driving with a suspended license; driving with an open container; driving without proof of insurance; and improper backing. Defendant moved to suppress all evidence stemming from his arrest, arguing that the arrest, made without either an arrest warrant or a search warrant, was illegal. The trial court agreed and granted the

motion to suppress. Because the officer had seen defendant violate the law and was in "hot pursuit" when defendant entered the residence, however, we conclude he was justified in entering the house and arresting defendant there. We therefore reverse the trial court's suppression of evidence resulting from the arrest.

At about 11:00 p.m., Officer G. L. Bowen was exiting a church parking lot across from a residential street. He saw a van coming toward him on that street, but as the van approached, it abruptly stopped in the middle of the roadway. The van then quickly backed up, with tires screeching. It turned into a driveway and continued backing at a high rate of speed, until it crashed into a parked vehicle. Officer Bowen pulled into the driveway behind the van, activating his blue lights. At that point, the van's driver was getting out of his vehicle. Officer Bowen ordered the driver to stop, but the driver looked at him and walked off toward the house. And when Officer Bowen ordered him to stop a second time, the driver sped up and ran into the house. The officer followed the driver into the house and arrested defendant there. The officer discovered defendant's license was suspended, and based on defendant's appearance and behavior, he suspected defendant was under the influence of alcohol as well. After arresting defendant for DUI (among other charges), Officer Bowen looked in the van, where he discovered one empty beer can, one partially empty beer can, and two full beer cans in a cooler.

1. The State argues that the warrantless arrest of defendant in his father's home was justified, and we agree.

(a) An officer may arrest a suspect without an arrest warrant if an offense has been committed in his presence. OCGA § 17-4-20. And while an officer must generally have a search warrant or consent to enter a home to make an arrest, an officer can enter a home to arrest a suspect when he or she has followed the suspect there in "hot pursuit." *Brown v. State*, 163 Ga. App. 209, 210 (1) (294 SE2d 305) (1982). "[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U. S. 38, 43 (96 SC 2406, 49 LE2d 300) (1976). Accord *Duitsman v. State*, 212 Ga. App. 348 (1) (441 SE2d 888) (1994); *Brock v. State*, 196 Ga. App. 605, 606 (2) (396 SE2d 785) (1990).

As the Supreme Court explained in *Santana*, "hot pursuit" need not involve a high speed chase through public streets. Indeed, in *Santana* the "pursuit" began with the defendant standing in the doorway of her house;[1] she saw the police and then retreated inside

---

[1] The Supreme Court in *Santana* held that for Fourth Amendment purposes, private property is a "public place" if — like Santana's threshold or defendant's father's driveway — it is open to public view. 427 U. S. at 42.

the house. Id. at 40. Rather, the key to "hot pursuit" is that the defendant is aware he is being pursued by the police, and is therefore likely to disappear or destroy evidence of his wrongdoing if the officer takes the time to get a warrant. In other words, the "hot pursuit" provides the exigent circumstances necessary to justify the failure to obtain a warrant. Id. at 42-43.

We applied this doctrine in *Brown,* an obstruction case. There, the officer saw someone driving without headlights at night and pursued him to a house. The driver emerged from the car, looked at the officer, and ran into the house. Under these circumstances, we held it was lawful for the officer to arrest the driver in the house for driving without headlights and attempting to elude. *Brown,* 163 Ga. App. at 209-210.

The circumstances in this case are very similar to those in *Brown.* Although the pursuit in *Brown* was longer than the pursuit in this case, that distinction is irrelevant; the crucial similarity is that, like the driver in *Brown,* defendant (while still outside the house) looked right at the uniformed officer in his marked car, ignored his orders to stop, and ran into the house. Thus, the officer was justified in following him into the house to arrest him for improper backing (OCGA § 40-6-240 (a)).

Defendant's argument that the "hot pursuit" doctrine applies only to felonies is also belied by *Brown,* in which the driver was driving without headlights, a misdemeanor analogous to improper backing in terms of its seriousness. His reliance on *Hamrick v. State,* 198 Ga. App. 124 (1) (401 SE2d 25) (1990), in which we rejected the State's argument based on "hot pursuit," is misplaced; although we noted that the offenses involved in *Hamrick* were misdemeanors rather than felonies, the decisive factor in that case was that the defendant, who had entered the house before the officers arrived, was voluntarily coming out to talk to them in response to their knock, so entry into the house to make the arrest was unnecessary. Id. at 126 (1).

(b) On appeal from a trial court's grant or denial of a motion to suppress, the trial court's findings of fact are accepted unless they are clearly erroneous, but its interpretation and application of the law is subject to de novo review. *Vansant v. State,* 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In this case, the trial court's suppression of evidence stemming from the officer's entry into the house was based in part on its erroneous conclusion that defendant had not done anything illegal in the officer's presence, which in turn was based on its misinterpretation of the improper backing statute. "A driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic." OCGA § 40-6-240 (a). Defendant argued, and the trial court apparently agreed, that since there

was no other moving traffic to interfere with, defendant could not have committed the offense of improper backing as a matter of law. In order to be proper, however, the backing must be "with safety" as well as without interference with traffic, and when a driver backs into another vehicle, the backing is not done "with safety," regardless of whether that vehicle is moving or occupied.

The trial court also erred in concluding that its decision was controlled by *Hamrick v. State*, 198 Ga. App. at 124 (1). As we noted above in Division 1 (a), *Hamrick* is distinguishable on the grounds that the driver in that case, having already entered the house before the officers arrived, was coming out of the house as requested when the officers went in. *Hamrick* does not negate the applicability of the "hot pursuit" analysis to cases like this one, where a suspect sees or hears an officer while outside the house and then runs inside. Rather, it holds that even where there is a "hot pursuit," the officer should not go into the house to make the arrest unless it is necessary to do so. In this case, like *Brown* but unlike *Hamrick*, the officer attempted to effectuate the arrest outside the house, but was unable to do so due to the driver's failure to cooperate.

2. Defendant suggests that even if his arrest was legal, the officer's search of his van was not. When an officer makes an arrest, however, he may search the immediate presence of the arrested person "for the purpose of: [d]iscovering or seizing any . . . things which . . . may have been used in the commission of the crime for which the person has been arrested." OCGA § 17-5-1 (a) (4). And more specifically, when an officer arrests a driver for DUI, the officer may conduct a warrantless search of the passenger compartment of the driver's vehicle for the purpose of obtaining evidence of intoxication. See *Knox v. State*, 216 Ga. App. 90, 91 (1) (453 SE2d 120) (1995); *State v. Holden*, 162 Ga. App. 33 (290 SE2d 130) (1982). If defendant had stopped outside his van, as the officer ordered him to do, the officer could have conducted a search of the van incident to defendant's arrest for DUI; defendant's attempt to evade arrest, with the result that the van was no longer in his immediate presence when he was arrested, did not deprive the officer of the authority to search the van for "things . . . used in the commission of the crime" (i.e., containers of liquor).

*Judgment reversed. Andrews, C. J., and Smith, J., concur.*

DECIDED MARCH 4, 1997 —
RECONSIDERATION DENIED MARCH 20, 1997 — ■

*Gerald N. Blaney, Jr., Solicitor, Scott A. Drake, Richard E.*

*Thomas, Assistant Solicitors*, for appellant.
 *Clark & Towne, David E. Clark*, for appellee.