## A97A0839. VIRGIL v. THE STATE.
(488 SE2d 694)

ANDREWS, Chief Judge.

Rosene Virgil was found guilty by a jury of driving or being in actual physical control of a moving vehicle while under the influence of alcohol.[1] She appeals claiming that the trial court: (1) erred by refusing to charge the jury on the defense of accident, and (2) erroneously charged the jury as to what action constituted actual physical control of a moving vehicle.

1. The evidence was sufficient to allow a rational trier of fact to conclude beyond any reasonable doubt that Virgil was guilty of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Virgil and her husband testified that they drove to Morgan's Supper Club at about 4:00 a.m. on the morning of December 16, 1995. Virgil's husband testified that he drove the car to the club, parked in front, and went inside leaving Virgil in the car in the front passenger seat with the engine running. Virgil testified that, while her husband was inside the club, she was sitting in the passenger seat watching various people she knew walk out of the club. She testified that Greg Lewis walked over to the car and leaned in the open driver's side window to speak to her. In order to speak to Lewis, Virgil testified that she leaned from the passenger seat toward the driver's side window over a console between the driver's and passenger's seats placing her hand down on the driver's seat for balance. A doorman at the club also testified that he saw Virgil leaning from the passenger seat across the front of the car to speak to Lewis. As she was attempting to move her upper body from this position to sit back in the passenger seat after speaking to Lewis, Virgil testified that she lost her balance and fell, with her head and upper body falling under the steering wheel and onto the floorboard of the car in the area of the accelerator and brake pedals. She testified that, as she was struggling to get up from the floorboard of the car, she could feel herself being jarred around and then felt a hard impact. She testified that, after the impact, she crawled out of the driver's side door and saw that the car had moved from where it was parked, traveled across the parking lot in front of the club, and crashed into a fire hydrant. She testified that she had no intention of moving the car and was not driving or in actual physical control of the car when it moved.

---

[1] She was found guilty under two counts alleging that she was a less safe driver (OCGA § 40-6-391 (a) (1)) and that she drove with an alcohol concentration in her blood in excess of the legal limit (OCGA § 40-6-391 (a) (5)). The trial court merged the two counts and sentenced Virgil only on the conviction under OCGA § 40-6-391 (a) (1).

In conjunction with this testimony, Virgil also presented testimony that the car was equipped with an automatic transmission that was operated by a stick shift on the floor of the car adjacent to where she was leaning and fell. She presented evidence that the car could be easily shifted from park to drive by depressing a button on the shift without the necessity of first depressing the brake pedal.

Virgil admitted that she had been drinking alcoholic beverages prior to the incident and that she had consumed enough drinks to feel intoxicated. But she testified that she was not concerned about how much she was drinking because her husband was doing all the driving. Her defense was that she was not driving or in actual physical control of the car when it moved. Based on the evidence she presented, her contention was that, when she lost her balance and fell onto the driver's side floorboard while leaning over from the passenger seat, she unintentionally fell against the shift lever and the gas pedal apparently causing the car to shift into drive and move forward while she was floundering on the floor of the car.

In contrast to the evidence presented by the defense, the State presented testimony from eyewitnesses who testified they saw Virgil in the driver's seat of the car at the time of the incident. Greg Lewis testified that, when he spoke to Virgil outside the club, she was seated in the driver's seat of the car. He testified that, after taking a few steps away from the car, he heard the car engine race. As he turned to look, he testified the car came past him and ran over his foot, then proceeded to hit two other people in the parking lot and crash into a fire hydrant. Jessie Small testified that, when she walked out of the club, she saw Virgil sitting in the driver's seat of the car. She spoke to Virgil as she was sitting in the car, then walked away a short distance. She testified she heard a loud engine noise and turned around and saw the car accelerate forward, hit two people and crash into a fire hydrant. Although she could not see the driver when the car was moving, she testified that Virgil was the only person in the car. Yummett McBain testified that, when she left the club, she saw Virgil sitting in the car in the driver's seat. After she spoke to Virgil, she walked away a short distance, then heard a loud noise and a screech and saw Virgil driving the car toward her in an erratic manner. She said she saw the car hit one person, swerve up on a curb, hit another person, then come to an abrupt stop against a fire hydrant with the wheels still spinning. She testified that, as the vehicle was moving, she could see Virgil in the driver's seat "hovered over the steering wheel."

A police officer called to the scene of the incident testified that, based on his observations of Virgil at the scene, including the smell of alcohol on her breath and her inability to successfully complete field sobriety tests, his opinion was that it was less safe for her to drive.

After being read her implied consent rights, Virgil consented to a State-administered test of her blood. A forensic chemist from the State Crime Lab testified that Virgil's blood tested positive for alcohol at a level of .19 grams per hundred milliliters of blood.

The State also presented testimony from a police officer that Virgil gave varying accounts of what happened, first saying that she was in the driver's seat of the car when it accelerated on its own, then later contending that she was in the passenger's seat when the car took off on its own and that she jumped into the driver's seat to attempt to stop the car.

2. As to Virgil's contention that the trial court erred by refusing to give her requested charge on the defense of accident, we find no basis for a charge on the defense of accident under the facts of this case.

A crime is defined as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." OCGA § 16-2-1. Under OCGA § 16-2-2 "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Thus, the essence of the defense of accident is that the criminal act alleged to have been committed by the defendant was not intentional or the result of criminal negligence. *Campbell v. State*, 263 Ga. 824, 825 (440 SE2d 5) (1994).

Virgil admitted at trial that she was in the car under the influence of alcohol when the car accelerated and moved across the parking lot. She contended that the State failed to establish the element of the offense requiring proof that she drove or was in actual physical control of the car. She did not contend that she unintentionally drove or was unintentionally in actual physical control of the car. Rather, she testified that, while leaning over from the passenger seat, she lost her balance and fell in a manner that accidentally caused the car to move forward and that, when the car moved forward, she was in a position on the floorboard of the car where she was neither driving nor in actual physical control of the car. Accordingly, she did not claim that any contested element of the offense was done by accident. She simply claimed that the evidence showed she was not driving or in actual physical control of the car. The trial court did not err by refusing to give a.charge on accident.

3. Virgil claims the trial court erred by charging the jury that: "[A] person shall be considered in control of a moving vehicle if her actions are responsible for the movement of that vehicle, whether she intends to move the vehicle or not, as long as the vehicle moves from the actions of the person and not from a force totally beyond her control." She objected to this charge at trial and contends on appeal that

it was an improper instruction as to intent and relieved the State of its duty to prove that she was driving or in actual physical control of the car.

We agree that the charge was harmful error and that Virgil is entitled to a new trial. The State cites as authority for this charge the case of *Greene v. State*, 214 Ga. App. 664, 665 (448 SE2d 758) (1994), where the issue was "whether Greene was in control of a moving vehicle at any time while intoxicated." In that case, a police officer observed Green, who admitted he was intoxicated, passed out in the driver's seat of the truck and slumped over the steering wheel. Id. at 665. Greene's foot was on the brake while the truck was in a stationary position with the engine running in reverse gear. Id. When the officer tapped on the driver's side window, Greene "jumped up" and the truck rolled back a few inches. Id. Greene argued that this was not the kind of movement prohibited by OCGA § 40-6-391 and suggested that it was no different than if a gust of wind had blown the truck back a few inches without any action on his part. Id. In finding the evidence sufficient to show that Greene was in control of a moving vehicle while intoxicated, we stated that, "It was Greene's own failure to maintain control of a vehicle that was running and in gear that caused it to move in the officer's presence, and not a force totally beyond his control." Id. at 665-666.

The facts in the present case are not remotely similar to the facts in *Greene*, supra, where the defendant was sitting in the driver's seat of the truck and argued that the movement of the truck was not sufficient. The central issue in the present case was not the movement of the car, but whether, taking Virgil's version of the incident as true, she was driving or in actual physical control of the moving car after she fell headfirst onto the floorboard. This was an issue for the jury's consideration, and nothing in *Greene*, supra, supported the charge. Under the facts of this case, the charge had the effect of eliminating the jury's consideration of Virgil's defense that she was not driving or in actual physical control of the car. Accordingly, the error was harmful and requires reversal.[2]

*Judgment reversed. Beasley, J., concurs specially. McMurray, P. J., concurs in Divisions 1 and 2 and in the judgment.*

BEASLEY, Judge, concurring specially.

I agree that defendant is entitled to a new trial and fully concur in Divisions 1 and 3 but not in Division 2. If the jury believes Rosene Virgil's version of the event, then it must be guided in its deliberations by a charge on accident. It was her sole defense, she sought

---

[2] We need not consider Virgil's additional claim that the charge constituted an improper comment by the trial court on the evidence.

such a charge from the pattern charge book, she objected to the court's refusal to give it, and she reserved objections after the court's charge was given.

Even without request, the trial court must instruct the jury on the principle of accident when it is the sole defense; the court is obligated to call this defense to the jury's attention and enable the jury to intelligently consider it. *Metts v. State*, 210 Ga. App. 197, 198 (2) (435 SE2d 525) (1993); *Harris v. State*, 145 Ga. App. 675 (244 SE2d 620) (1978).

Defendant did not dispute that she was the only person in the car and in the front seat when it moved. She did not dispute that the car moved from where it was standing idle with the engine running and ended up against a fire hydrant. She did not dispute that she had consumed alcoholic beverages prior to the incident. She did not even dispute that she had caused it to move. Then how could she escape conviction for being in physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe to her to do so, in violation of OCGA § 40-6-391 (a) (1)?

"A person shall not be found guilty of any crime committed by . . . accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." OCGA § 16-2-2. " 'The essence of the defense of accident is that the defendant's act is not intentional.' " (Citation omitted.) *Metts*, supra at 198.

Virgil's explanation for what occurred is that it was an accident, that she "slipped and fell" onto the floor of the car while sitting on the passenger's seat and leaning on the driver's seat, some part of her body depressing the accelerator with the car in gear, and that her glasses fell off, and when she attempted to rise from the floor, she faced air bags which had deployed. If the jury believes the movement of the car was the result of an accident, then it could not find she was in physical control of the car. Like the testimony of the defendant in *Metts* that he may have unintentionally touched the child, Virgil's evidence is that she unintentionally touched the accelerator. Metts was entitled to a charge on accident, and likewise, so is Virgil. She did not depend solely on an inability of the State to prove she was in control of the vehicle beyond a reasonable doubt but rather came forward with the affirmative defense explaining what did cause the car's movement and thereby attempting to eliminate the element of criminal intent and "control." The trial court deprived her of that defense.

In *Morris v. State*, 210 Ga. App. 617, 618 (2) (436 SE2d 785) (1993), defendant was entitled to a new trial because the court refused to give a charge on accident; the defense was that Morris did not see the stop sign because of the fog. He was convicted of vehicular homicide in the first degree for driving while under the influence of

drugs in violation of OCGA § 40-6-391 (a) (2). Again, his explanation of why the incident occurred raised the defense of accident, as it does in Virgil's case.

"It is the law of this state that where there is only one defense on which a party relies, failure to instruct the jury as to the evidence supporting this defense with sufficient clarity and specificity that the jury will not only be required to pass upon it, but do so intelligently, in practicality directs a verdict against the defendant, in that the effect of the failure to charge is to withdraw and deny the defense and to that extent prejudices a defendant's right to a fair and impartial trial. [Cits.]" *Dinnan v. State*, 173 Ga. App. 191, 195 (1) (325 SE2d 851) (1984).

Only slight evidence requires the giving of a charge on a defendant's sole defense, even if other evidence tends to disprove the fact. Id. Even farfetched explanations must be given deference by the court in charging the jury, as the jury and not the court has the power to reject " 'the defense theory raised by the accused's testimony.' " (Citation omitted.) *Owens v. State*, 173 Ga. App. 309, 313 (5) (326 SE2d 509) (1985). See also *Jones v. State*, 220 Ga. App. 784, 785 (470 SE2d 326) (1996). " 'The evidence necessary to justify a jury charge need only be enough to enable one to carry on a legitimate process of reasoning.' " (Citation omitted.) *Williams v. State*, 209 Ga. App. 355 (1) (433 SE2d 361) (1993).

The court erred in refusing the charge on the basis that the charges on intent were sufficient to cover it. They were not, as they focused on the State's burden of proof.

In fact, the instructions were contradictory, as the court first charged that the jury could find defendant guilty if it found "that [she] intended to operate her vehicle at such time that she was under the influence of alcohol to the extent that she was less safe to do so than she would have been if sober. The State is not required to prove that the defendant intended to be driving under the influence or even — or even that she knew she was doing so." Later the court charged: "a person shall be considered in control of a moving vehicle if her actions are responsible for the movement of that vehicle, whether she intends to move the vehicle or not, as long as the vehicle moves from the actions of the person and not from a force totally beyond her control."

No instructions were given to guide the jury as to the proper consideration to be given to Virgil's explanation for the event, the *reason* for the occurrence as she, the only directly involved witness, understood it. The jury was not told that if the movement of the vehicle was accidental, i.e., not in her control, she could not be found guilty because of the principle of law codified in OCGA § 16-2-2. The jury should have been required to pass on this issue, intelligently and

under the pertinent rule of law. *Harris*, supra at 676.

DECIDED JULY 1, 1997.

*Colette B. Resnik*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, W. Cliff Howard, Elaine W. Brooks, Assistant Solicitors*, for appellee.